You may be seated and good morning to everyone. As more people come in, if they do, would you all wiggle in and make room for them? It's painful up here to watch people stand during arguments, so help us with our pain, will you? Good. Well, we're ready for the first case this morning, which is case number 18, 9559 Zavala-Ramirez v. Barr. Good morning, your honors. My name is Lori Rosenberg. I'm the attorney for petitioner Gerardo Zavala-Ramirez. And before I begin, I do want to bring to the court's attention three cases for which I would like permission to file 28 J letters after oral argument. Barr All right, if you will please remember to do that. Rosenberg Okay. I may refer to them in my discussion. However, let me begin by saying this is a case about the stop time rule and plain statutory language. And the important point— Barr Now, you're proceeding on jurisdiction or stop time? Rosenberg Well, the case— Barr Is there a distinction in the jurisprudences between the two concepts? Rosenberg Yes, there is, your honor. And I will tell you that when I began writing the briefs in this case, I did focus also on subject matter jurisdiction. But having read the intervening cases of numerous circuit courts of appeal and the Board of Immigration Appeals— Barr After you filed your brief, you've read some more cases? Rosenberg Correct. Barr Is it a good idea to do the reverse? Rosenberg Yes, but unfortunately— Barr Read the cases and then write the brief? Rosenberg Correct. It is. But unfortunately, the circuit courts didn't accommodate me and issue their decisions while I was writing the brief. Barr Well, not only is it a good idea, but it's fatal if you don't do it. I mean, if you're making some argument now that you didn't make in your brief, your opening brief, then how can you do that? Rosenberg I'm not doing that, your honor. Barr Okay. Rosenberg I addressed in my brief, in both my reply brief and my opening brief, the stop-time rule and the impact of the stop-time rule on Mr. Zavala's status. In fact, I expressly stated in one of the briefs— Barr As it relates to the notice, the charging document? I thought that argument was all about jurisdiction. Rosenberg The charging document is important because it's the charging document that relates—that is the notice to appear— Barr Yes. Rosenberg —in accordance with the statutory language. And that same notice to appear is what is referred to in the context of the stop-time rule. Barr It is, but I thought your argument related to the notice of appear related to whether the court had—whether the I.J. had jurisdiction. Rosenberg Correct. But it also—my arguments also state—and I can refer you to pages specifically if you like. Barr Sure. Rosenberg Yes? Okay. Where I stated, for example, that given the fact that the notice to appear was defective and would cut off the accrual of time, meaning that his time would continue accruing until today or any time thereafter when he was served a valid, not defective notice to appeal, that his time would keep accruing, which would bring us to 2019 and his last departure from the United States, which is what was at issue in the case. And in his case below in front of the immigration judge, his now accrued time would be 17 years, and there would be no need to even address that temporary departure. Our position is still that the temporary departure was fewer than 90 days and would not jeopardize his arguable 10 years accrued time that he had at the time of the hearing. But if we just deal with the stop-time rule and we recognize that a defective notice to appear cannot stop the accrual of time, which is exactly one of the cases I wanted to bring to your attention that just came out fairly recently, was the Ninth Circuit's decision in Lorenzo Lopez v. Barr. And so that case talks about the stopping of accrual of time. And it also talks about another point in our argument today, which I did argue in my briefs, which is the fact that two notices are not good, that you cannot cure a defective notice to appeal by issuing a notice of hearing. If I may, let me just get clear then on one point. If the notice to appear was filed on August 15, 2012, if let's assume for the moment that that is defective and your time continues to run, okay, to 2019, that gives you an additional seven years. Correct. Okay, but is it the rule that you can't be gone more than 90 days from the country? You can't be gone more than 90 days during the time period, not forever or whenever, but during the 10-year period running back from the valid notice to appear. So if we were measuring today and he got a new valid notice to appear, the 10-year period would be back to 2009. So whatever he did between 2002 and 2003, which we maintain was fewer than 90 days, it wouldn't be relevant. It just wouldn't be included in that 10-year time period that's measured for continuous physical presence. The whole issue is that did your temporary absence exceed 90 days and thereby break that continuous physical presence? To go on to the point that I want to bring to your attention here is there really is no two-step process. And the Board of Immigration Appeals in another case just recently issued that I want to two-step process is entirely valid, that the notice of hearing issued by an immigration judge can cure a defective notice to appear issued by DHS, the Department of Homeland Security. And that's basically the majority argument at the Board of Immigration Appeals. Its precedent decision is Mendoza-Hernandez, matter of Mendoza-Hernandez. I will provide all that to the court with my 28J letter. Hold on. You're saying that this is a BIA decision? The Mendoza-Hernandez case, yes. And you cite it for what purpose and to what effect? I'm mentioning it now because the BIA has now issued a precedent saying that a two-step process is permissible and adequate and works. Well, that's what you're challenging here. Correct. So what does that add to the mix? Pardon? What does this Mendoza case add to the mix? That that's precisely the policy that you're challenging. Correct. So all they're saying is it's valid and that's our job to find out whether it is or isn't. Right. I want to point out to the court that there is a nine-member, nine-board member dissent in that decision, which sets much of the position that I'm taking here today. But it is a precedential decision. It is, yes. And therefore, we would generally give that Chevron deference, right? Right, except there is no need for any deference to be given here, Your Honor, because we're talking about language that Justice Sonia Sotomayor found to be plain and clear and not in need of any such deference. It's part of the judiciary's interpretation of statutes. It's not something in which the agency has expertise. So... Was that the basis of Justice Sotomayor's decision? In Pereira v. Sessions, yes. She makes it very clear that the language is plain, that there's absolutely nothing, no ambiguity. No, but I mean, did she address the question of deference, of Chevron deference in Pereira? She does address Chevron. And she says no do. All right. Okay, so moving on... And how do you pronounce the name of that case, by the way? Which case was that? Pereira. Pereira v. Sessions? Is it Pereira or Pereira? You know, I'm not a Spanish speaker, so I can't speak authoritatively on that. The only Spanish word I know is Pereira. But it's not that one, I don't think. Well, you educate me then, Your Honor. I'm happy to follow your lead. Hey, I ask the questions, I don't give the answers. Could I ask you, just as long as we're on that track, why wouldn't the Supreme Court have dismissed in Pereira the case if their holding had pertained to jurisdiction? Wouldn't that have been the clear result? My understanding in the Pereira case is that they remanded that case. But if they lacked jurisdiction, which is your position now and that Pereira extends to, jurisdiction or its rationale does, wouldn't they have had to just simply dismiss that case or say that the case that was dismissed, it was essentially void or lack of jurisdiction? Would the Supreme Court have said there was no subject matter jurisdiction and therefore we're going to just dismiss this case? Well, if your position is correct, there was no subject matter jurisdiction. Well, that's not the position that I'm arguing here now, Your Honor. Okay. I indicated at the beginning of this discussion that having read the majority of circuit courts that addressed the overall Pereira argument and the issue of subject matter jurisdiction, I've now read also the intervening decisions of the Ninth Circuit in Lopez v. Barr and the Seventh Circuit in another case that I'm not arguing. I guess I'm, I think I understand you're arguing here today that you're changing your position, but I am trying to address the position that you argued in your brief. The position of the argument that? I think in the response brief, you know, the government makes, takes the position that one obvious reason we shouldn't extend Pereira to jurisdiction is because if you are correct about that position, Pereira, there would have been no subject matter jurisdiction in Pereira. Okay. That may be. You didn't respond to that in your reply. That's what I'm trying to get to. Okay. Because at this point, I'm not arguing that there's no subject matter jurisdiction. That's good to know, but that's what you argued in your brief. Now I'm looking right at your brief and on page six, you make a subject matter jurisdiction argument. Correct. All right. Well, taking it back now is not going to help you, you know, because you can't substitute another argument. Well, Your Honor, I'm not substituting my other argument of the impact of the stop time rule in this case, which many courts have set. The courts that have distinguished subject matter. Where is it in your brief? Let's get this. Where do I speak about? Where do you make it? Okay. Where I'm looking is. Does it have like a heading that we can read really easily? Let me check and I will give it to you. Yes. Okay. So in my brief, in the opening brief, um, let's see. All right. In section, um. Fifty-eight pages, right? Your brief? Yeah. Give us a page number at least. Page 27 in the opening brief is section C, Supreme Court's decision in Pereira requires termination. And it does say for lack of subject matter jurisdiction to conduct removal proceedings. But in that section. I'm on page 27. So help me. Where are you reading from? Well, my page 27. The heading. The heading is C. Correct. That's right, Your Honor. Which refers to subject matter jurisdiction. Well, that's right, Your Honor. Just Judge Holmes is a little faster than I am. I mean, I'm looking at that page 27. I don't even see a subject. Your Honor. May I look at yours, please? Yes. Maybe you've got a fancier computer than I do. Right. There's nothing to read. Oh, thanks. Thanks, Siri. Oh, my. Yeah. Yeah, you have a different page 27. That's interesting. So if I may go on, Your Honor. That section, that subsection of the brief talks about if you look on page 31, I say it so happens that the issue in the instant case lies at the intersection between the definition of notice to appear at 1229A and the stop time rule. As well as the statutory limiter that interrupts the accrual of continuous physical presence when there's an absence of more than 90 days. And then I talk about the stop time rule as it coincides with a notice of appear. To appear is used in both sections, 1229A and the stop time rule provision. And I state in here that if, for example, we applied Pereira to the stop time rule, that in fact there would be no need to go any further because the accrual of time would have continued. That's the argument I wanted. Where do you say that? Okay. Page 31. Yes. Page 31. And that, let me see if it has a section heading. It's .2 under C. The board's precedent decision fails to follow the Supreme Court ruling. And in that section I talk about the coincidence of the stop time rule with the notice to appear definition. And if you continue through. Well, you say it so happens that the issue in the instant case lies at the intersection between the definition of notice to appear and the stop time rule. That's correct. As well as et cetera. Now assume for purposes of our argument that we. Your Honor. We, just a second. We forgive your seeming lack of precision. And we say that we are going to listen to the stop time rule argument. What is your best case under the stop time rule? It's very simple. And I only have. Not just simple, just the best case. The best case is this. The petitioner. Normally cases have names and citations. What's your best case? Okay. My best case. Lopez v. Barr. The Ninth Circuit decision that I will include in my 2028 letter. And when did that come down? That came down on May 22nd, 2019. Thank you. If I may, your Honor, there are 20 seconds left and I'd like to reserve for rebuttal. If I may.  My name is Jesse Lorenz and I represent the Attorney General of the United States. I'd like to first address the court's questions about Pereira. Basically, it's the government's belief that petitioner in her briefs was only arguing the jurisdictional issue regarding matter of Pereira versus Sessions. In her opening brief, we believe that she was only contending that her proceedings were void ab initio, that the charging document did not vest jurisdiction with the immigration court, not the kind of corollary issue of the stop time rule. But an amicus boxes you pretty heavily across the years over your practice. So it's not as if you didn't know that there was substantial dispute about your practice. How do you justify it? Well, I mean, I'm not privy to the practical decisions that the board makes with DHS. I'm not talking about the board. I'm talking about your client more generally, the agency. Like I said, I'm not really privy to that. I mean, I can't- So you don't purport to defend it? I don't know exactly what. I mean, I know what they were doing. They didn't have like a computer system that matched, but that's kind of- Well, the fundamental elements of due process that you learn in law school 101A are date, time, and subject matter for discussion, correct? Sure. You don't have those things. You don't have due process notice. And I think- So whether we call it jurisdiction, subject matter jurisdiction, stop time rule, whatever label we put on it, just looking at the elements of due process, you send out notices. You're hereby notified that you must do this, and you don't say when, where, what time, nothing. Sure. And you continue that practice. Now, if we listen to the advocates in the amicus brief, you heard thousands of cases in which you're doing this. Well, and I think as a practical matter, it's two different agencies, right? We have the board and DHS. So DHS is issuing the noticing, but they don't have control of the court's docket. I think as a comparison, it's kind of like a U.S. attorney's office in the district court. They're different agencies. Maybe the U.S. attorney's office issues the charging document, but it can't say for sure. And this is just kind of speculation on my part, but that's what was happening here. DHS was issuing the document, but they don't have access to the court calendar. So then when the court received it, they were then sending the notices of hearing out. And what happened here was he was issued the charging document on August 15th, I believe, filed with the court the same day. And then the next day, the court sent out the hearing notice. And I think your concerns about due process are alleviated here because he did receive time, the time and date of when he was supposed to appear. And it's obvious from the record that he had actual notice. I mean, he appeared for all of his hearings with an attorney and fully participated in his removal proceedings. I mean, he applied for relief. He presented evidence. He presented testimony. It was ultimately denied at the end of the day. But I don't think there's any claim here that he didn't have actual notice of the hearing. And I think that the board's precedent in matter of Bermuda's Coda addresses that. When you're talking about a notice, he did receive notice here and under the regulations to vest jurisdiction or commence removal proceedings, however you want to say it, the document does not have to include those things. I think here, the document commencing the removal proceedings on August 15th had everything it needed to per the regulations. And then the next day, he was provided with notice of his hearings. And like I said, he participated fully. So is the board's, I heard there was some reference to a board precedent that essentially said when you combine the notice of hearing and the notice to appear that you essentially effectuate the stop time rule. Is that it? There's a newer decision. And like I said before, we didn't know that that's what she was arguing. We didn't think that she had meaningfully put forth a stop time challenge. But yes, in Mendoza-Hernandez, the board agreed basically with the same logic of Bermuda's Coda that a two-step process can stop time. So basically here, he was served with the notice to appear on August 15th. Now, because that didn't have the date and time, under Pereira, that didn't stop his time. But then the next day, he served with a notice of hearing providing that missing information. And that's when the board, in this case and under Mendoza-Hernandez, would consider the time stopped. And I think that comports with the logic of the stop time rule. Basically, it's to put the alien on notice that he's in proceedings. And that's when the time of accrual of the continuous physical presence period ends. And that happened here. What language in Pereira allows that? Well, I don't think there isn't anything in Pereira that specifically allows that. But Pereira doesn't. It's a little of some importance, right? It's not like somebody up on a curb giving you an opinion. It's the United States Supreme Court speaking in black and white. Sure. But Pereira won't. So there has to be some language in Pereira that allows the type of interpretation or spin that you're giving that case. And I'd like to know what that language is. Well, Your Honor, I don't think there's anything I can specifically point to in Pereira. There's just nothing inconclusive with what the board's doing in Pereira. Here, in Pereira, the major concern, as I understand it, was that aliens were being served with notices to appear, let's say, in 2010. And then DHS, for whatever reason, or the immigration courts, for whatever reason, did get around to scheduling hearing for several years. So that's 2013, for example. That's cutting off three years of continuous presence. Here, we don't have that concern. I mean, he was served with a notice of hearing the next day. We're talking about an additional day. But there's nothing in Pereira that says. And I think Petitioner's Counsel brought up Lorenzo Lopez, the case in the Ninth Circuit, rejecting the board's Mendoza-Hernandez decision to dissent. And that case points out that there's nothing inconsistent with this two-step process with Pereira. And I think that's important to note, that the main purpose of the stop-time rule is that the alien's on notice. And with the two-step process, the alien would be on notice that they had to appear. And I think that's also kind of consistent with the other aspects of the stop-time rule. Regarding the dissent, which is normally what we do when we read cases up here, you're asking us to create a circuit split, right? Well, I'm asking for this court to accord Chevron deference to the board's decision. You're asking us to ignore the Ninth Circuit's ruling, because the ruling that you seek in this case, at least in effect, would be 180 degrees opposite the result that was reached in the Ninth Circuit. Well, and I don't disagree with that. I think we are essentially seeking that. But I don't think the court has to reach that in this case. Because like I said, her main argument is that this is a jurisdictional issue, not a stop-time rule issue. She didn't. Not those words. She didn't. She didn't say that. That's fair. But this Mendoza-Hernandez case wasn't briefed. I mean, we would. That is her heading, though, in her brief, that she is talking about subject matter jurisdiction. Well, we disagree with the subject matter jurisdiction argument. I think it's pretty clear that immigration courts— That's the argument she's making, right? I'm trying to throw you a line here. I'd take it if I were you. That's what she's arguing, right? Yeah. I think that the main argument is that the court didn't have jurisdiction over her proceedings. That is her main argument, and not the stop-time rule. That's our position. Because the Mendoza-Hernandez case wasn't briefed by either party. I mean, it wasn't an argument that was raised before this court. I mean, we're happy to file supplemental briefs— If it's not a jurisdictional argument, wasn't it forfeited? I mean, the only reason we were talking about jurisdiction was because you, sua sponte, exhausted it, or the BIA did, by considering the Pereira jurisdictional argument. But we can't do that if she didn't raise the non-jurisdictional argument below. It's forfeited. We don't have a basis to consider it. No, I think— Do you see what I'm saying? I do see what you're saying, but I think— I'm a little confused now about where the government is on this. There's two different aspects to this Pereira argument, I think. And the argument that we think she's making is basically that the immigration court never had jurisdiction. OK? That's a separate argument. Then the other argument would be that the service of the notice to appear didn't stop time for cancellation of removal purposes. Right. Was that exhaustive? So we don't feel that that was properly raised before this court. Because, I mean, there's some passing references to it in her brief, but there's no real specific argument to that. But Judge Moritz gets at a more fundamental point. Is it exhaustive? I mean, did she raise this before the BIA? That's a whole different thing from what she's done before us. Did she raise a stop-time-like argument, or him, through counsel? Was there a stop-time argument raised before the BIA? No. The argument was mostly on the— Well, I mean, it was on the 90-day absence argument. Yeah, but not this Pereira business. Sure. But I believe the board, sua sponte, addressed the stop-time rule. But they addressed it as an exhaustion issue. And that's why my understanding was— Maybe I misunderstood, but I understood that's why you weren't objecting to the lack of exhaustions, because it was jurisdictional and it was sua sponte exhausted. That was my understanding. But I think that the confusion here is that there are two separate aspects of Pereira, right? There's a jurisdictional argument that the courts never had jurisdiction, that the case would have to be totally redone, right? And then the other argument, which we don't think she's properly made before this court, is that the service of that notice to Pereira couldn't stop time, and then the hearing notice didn't cure the lack of time. And I'm asking if she made that properly before the BIA, and I think you're saying she didn't make that one properly before the BIA. I don't think she made that one, but I do think the board addressed that one in their footnote. So the board may have saved her bacon on it? Yes, but we would say that it wasn't— Let me ask you this, because I think the time is going to run. I actually had very substantial doubt on the merits of the case. There is evidence that was introduced that shows that, in fact, she was not gone more than 90 days during this interim period when she went to Mexico. Is that correct? Well, I think you're referring to the criminal docket? Yes, where it says, walk in. What does walk in mean to you? I think there's a lot of vagueness around that. At first, I would argue that— I'm sorry, and I don't want to argue with you, but I just didn't see the vagueness. So somebody says, oh, what's vague? What's vague about walk in? This is not some ghost or some spirit. This is a person who walks in referring to this person.  I'd like to point out a couple of things. First of all— What's ambiguous about that? First of all, the attorney who represented him before the IJ, immigration judge, was asked about that particular document. That's at page 81 and 82 of the record, the hearing transcript. The immigration judge asked, does that prove that your client was here? Do you have any documents that prove he was here during that time? The attorney says no. They didn't bring that up before the board. Additionally, I would note, the docket entry you're referring to, there's no actual entry date of February 11, 2003. This is at Administrative Record 412. There's a February 6, 2003 entry that indicates that he would walk in on February 11. However, there's no docket entry for that date. Then, on February 28, the court entered— How would there be a docket entry if there was just a walk-in and the record, no? But that docket entry is on February 6. It's not on February 11. The docket entry that says the defendant would walk in is on February 6. That's before it happened. I think what—I mean, I don't know. That would have been an argument that they should have raised before the immigration judge or board. But I think there's just a lot of vagueness around it. Then, subsequent on February 28 and March 12, 2003, we have entries that indicate that he was in violation of his probation and that there was an order to show cause. Then, not until August or April 21, 2003, the docket reflects that he appeared in court. April 21 is outside of the 90-day period that he's trying to establish from December 2002. I'm talking about the walk-in date. Like I said, if you look at the record, this is on AR 412 or Administrative Record 412. The entry indicates on February 6. There's a February 6 docket entry indicating that he will walk in on February 11. But there's no corresponding February 11 entry. Will walk in. It says walk in. Well, it says W walk in. So I assume that means will. But again, I think that just speaks to the vagueness of the entry. We don't have an actual February 11 docket entry that he actually did walk in. We just have a February 6 entry, W walk in at 2 p.m. So I don't know. And again, even before that, on January 21, 2003, we have an entry that said he was in violation of his conditions of probation. So I think it doesn't, I don't think it does exactly what he wants it to. I don't think it shows conclusively that he was here and it was his burden. And now he has to show. It doesn't have to show conclusively? Yeah, here. He has to compel the conclusion that he was here for 90 days. His burden before that. I understand what his burden is, but it doesn't have to be conclusive. Oh, I'm just substantial evidence center review. It does it before you. Yes, right. And again, like I said, he didn't bring this up before the agency. I mean, he was specifically asked about this document and before the immigration judge, which would have been, you know, the immigration judge is a trier of fact. That would have been the time to bring it up. And he said nothing else after he presented his case or after he presented his evidence. He was asked about this before. The record of the grow company, the landscape company. Well, the board under it, isn't that an official business document? I think the agency under its precedent, it's HLH ZYZ and it's cited in our brief, but under that precedent, they can accord that less weight because they didn't have any documents corroborating that. They didn't accord it any weight, not less weight. They just. Yeah. And that's fair. And I think that's because they didn't, the author of the document didn't appear for cross-examination. The alien admitted that they didn't have any documents that could corroborate those dates. And when he was asked why nobody came to testify. It was corroborated by his own testimony. Which your honor was vague. I mean, he said he was guessing as to his return date in the hearing transcript. I mean, there's a lot of vagary, I think, around the entire thing. And it was his burden to show that he was here for, was not gone for more than 90 days. He didn't so testify. He said, well, his testimony, he testified that he left, he left, he left, he left in December. And then he testified that he tried to return. And on January 20th, 2003, had a couple of attempts where he was stopped at the border and sent back. But then he thought he returned sometime in February. And he admitted on, I believe it was cross-examination that he was just kind of, he was guessing. To quote him on page 91 of the record, I just think that it's then more or less. So I don't think that's all that conclusive as to exactly when he returned. Let me see. So you're resolving every doubt against the petitioner. Well, it's his burden to show that the record compels the conclusion he seeks here. So I'm not. What's better than his own testimony? Well, like I said, the record saying that he worked during that period. Well, like there was, there was reasons for the board not to accord that evidence weight. And I think his testimony, that's my problem is it seemed to me that, that every, every possible excuse or, or resolution of doubt that could possibly be made was made so that this chap couldn't be said to have been there during that period. Well, like I said, I think it was, I mean, it was his burden to prove. And I feel like the compelling evidence just doesn't compel the conclusion that he seeks. Now, I mean, we have other evidence that's inconclusive as to his return date. His uncle said he thinks it was in spring 2003. And I mean, if that happened in March or April, that's outside of the 90 day window, late March, early April. I mean, there's a lot of reasons. I think there's a lot of evidence that supports the immigration judge's conclusion here and nothing that compels a conclusion he seeks regarding that 90 day window. Thank you. I see him over time. We submit that's. I didn't realize the clock was running the other way, but you are out of time. Thanks. We'll add a minute to council's time to make up for. Thank you. With respect to the matter you were just discussing, the standard is a preponderance of the evidence. He had five, essentially five, items of evidence that I argued, we argue, in the aggregate is certainly sufficient to establish a 51% chance that he is, what he is stating is correct. That was the standard before the IJ. That is not our standard on review, right? Our standard is that he has to prove that the result he is arguing for is compelled under substantial evidence. Correct. I understand that. Yes. Although I would also argue, however, that in determining the statutory issue of whether his physical presence was derailed by being out over 90 days, I'd characterize it more as a mixed law and fact issue, not simply a factual issue. But in any event, the five points are, as you mentioned, Judge Lucero. Thank you very much. Your time is up. It's still running on here. Good. It may run all day. Your time is up. Oh, okay. It's on the other side. Thank you, Your Honor. You're welcome. Thank you both. Counselor, excuse the case is submitted. Thank you.